Eastern District of Kentucky
FILED
AUG 29 2005
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 04-431-DLB

VERNON NORMAN EARLE                                              PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA, ET AL.                                 DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

I.   **Introduction**

Vernon Norman Earle, an inmate at the United States Penitentiary-Big Sandy in Inez, Kentucky, has filed a *pro se* complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

The named defendants are the United States of America and U.S.P.-Big Sandy Warden Dan L. Dove. Additionally named as defendants are Federal Bureau of Prisons' Correctional Officers Steven Gardner, Timmothy Fazen Baker, Ella Anderson, and Kim White. Federal Bureau of Prisons' Central Office Director Harly Lappin is also named as a defendant.

In his complaint, Plaintiff alleges his due process rights have been violated because the Bureau of Prisons (BOP) is requiring him to pay the costs associated with his D.C. convictions. According to Plaintiff, he is no longer obligated to pay the costs and his refusal to participate in the BOP's Inmate Financial Responsibility Program (IFRP) is having an adverse impact on him in the form of the loss of prison privileges. Plaintiff seeks

1

seeks compensatory and punitive damages, declaratory and injunctive relief.

## II.   Factual Background

In previous actions[1] filed with this Court, Plaintiff has alleged he is a Jamaican citizen who came to the United States on or about January 3, 1976. In April, 1987, Plaintiff was convicted in the District of Columbia Superior Court and on April 14, 1987, was sentenced to two consecutive terms of fifteen (15) years to life after having been convicted on two counts of assault with intent to kill while armed. On October 22, 1987, Earle was sentenced to two consecutive terms of twenty (20) years to life after having been convicted of first degree murder while armed, and three (3) to nine (9) years each after having been convicted of two counts of assault with a dangerous weapon. It is undisputed that Plaintiff was sentenced in D.C. Superior Court on all counts for violating numerous provisions of the D.C. criminal code.

On October 22, 1987, in Case No. F4395-85EF, the Superior Court of the District of Columbia said in its "JUDGMENT AND COMMITMENT/PROBATION ORDER" that:

> Costs in the aggregate amount of $80.00 have been *assessed under the Victims of Violent Crime Compensation Act of 1981*, and have not been paid.

(emphasis added). Plaintiff's Exhibit C-3 at p. 2.

On April 14, 1987, in Case No. F4395-85, the Superior Court of the District of Columbia said in its "JUDGMENT AND COMMITMENT/PROBATION ORDER" that:

> Costs in the aggregate amount of $500.00 have been *assessed under the Victims of Violent Crime Compensation Act of 1981*, and have not been paid.

(emphasis added). Plaintiff's Exhibit C-3 at p. 1.

---

[1] See Pikeville 04-CV-172-DCR and Pikeville 04-CV-239-DCR.

On March 25, 2004, Plaintiff's Unit Team consisting of Unit Manager Timmothy Fazen Baker, Case Manager Ella Anderson, and Counselor Steven Gardner met with Plaintiff for his "program review." At that time, Plaintiff was informed that, based upon the aforementioned 1987 orders from the D.C. Superior Court, he still owed "court costs" and, thus, he needed to be placed in the IFRP. The IFRP systematically applies an inmate's financial resources to the payment of outstanding inmate debts assessed by and owed to courts. According to Plaintiff, Defendant Gardner insisted that he be placed in the IFRP and Gardner did so in retaliation for Plaintiff allegedly "smart mouthing" Gardner's friend, Counselor B. Caudill. When Plaintiff protested being placed in the IFRP, he was placed on "IFRP Refusal Status.[2]"

---

[2] The regulations governing the IFRP enunciate the "effects of non-participation" as follows: Refusal by an inmate to participate in the financial responsibility program or to comply with the provisions of his financial plan ordinarily shall result in the following: (1) Where applicable, the Parole Commission will be notified of the inmate's failure to participate; (2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough); (3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay; (4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility; (5) The inmate will not be placed in UNICOR. Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months. Any exceptions to this require approval of the Warden; (6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refusees shall be at least $ 25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations; (7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.); (8) The inmate will not be placed in a community-based program; (9) The inmate will not receive a release gratuity unless approved by the Warden; (10) [Reserved]; (11) The inmate will not receive an incentive for participation in residential drug treatment programs. See 28 C.F.R. § 545.11 (2005).

III. **Discussion**

In his complaint, Plaintiff alleges that 18 U.S.C. §3013(c)[3] exempts him from eligibility for IFRP and/or IFRP refusal status. Section 3013 states, in pertinent part:

Special assessment on convicted persons

(c)  The obligation to pay an assessment ceases five years after the date of the judgment. This subsection shall apply to all assessments irrespective of the date of imposition.

(d)  For the purposes of this section, an offense under section 13 of this title is an offense against the United States.

Plaintiff argues that because the dates of judgment were both in 1987, his obligation to pay the D.C. Superior Court's assessment expired in 1992. Consequently, he rationalizes, he cannot currently be placed in the IFRP or on IFRP refusal status based upon his 1987 assessments. The Court disagrees.

As an initial matter, the Court notes that section 3013(c) was not in effect at the time Plaintiff was sentenced. Its effective date was December 11, 1987. *See* footnote 3 below. Therefore, the D.C. Superior Court assessment could not possibly have been pursuant to a statute which did not exist at the time Plaintiff was sentenced. Plaintiff's reliance on section 3013(c) to support his argument that he is no longer obligated to pay for his D.C. Superior Court assessment of $580.00 is misplaced.

Additionally, the plain language of the judgments indicates that the costs were assessed pursuant to the District of Columbia Victims of Violent Crime Compensation Act

---

[3] Section 3013(c) was enacted as part of the Criminal Fine Improvements Act of 1987 and went into effect on December 11, 1987. *See* PL 100-185, 101 Stat 1279.

4

of 1981 (VVCCA)[4], rather than 18 U.S.C. § 3013(c). Simply put, the five-year collection period cap of section 3013(c) is inapplicable to the D.C. Superior Court costs owed by Plaintiff. Consequently, Plaintiff is subject to the IFRP's rules and the lawful consequences which arise from being placed in IFRP refusal status.

To the extent Plaintiff challenges his "refusal status" under the IFRP, particularly its effect on the loss of prison privileges, the Court notes that every court to consider the issue has upheld the IFRP against constitutional challenges. *See McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999) (noting that the IFRP "has been uniformly upheld against constitutional attack"); *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 548 (9th Cir.1998) (citing cases); *Dorman v. Thornburgh*, 955 F.2d 57, 58-59 (D.C.Cir.1992) (holding IFRP does not deprive inmates of constitutional rights to due process); *United States v. Williams*, 996 F.2d 231, 234 (10th Cir. 1993) (acknowledging constitutionality of the IFRP); *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2d Cir.1990) (per curiam) (holding BOP did not exceed its authority in establishing IFRP and that the program does not violate due process); *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir.), *cert. denied*, 493 U.S. 870 (1989).

The IFRP has been described by the Sixth Circuit as "a work program instituted by the Bureau of Prisons to encourage 'each sentenced inmate to meet his or her legitimate financial obligations." ' *Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001). Although the Court acknowledges that the Sixth Circuit has not been presented directly with a constitutional challenge to the IFRP in a published opinion, the Court has noted that

---

[4] The VVCCA's purpose is "to provide for the payment of compensation to innocent persons killed or injured as the result of violent crime committed in the District of Columbia." See D.C. City Council, Judiciary Committee Report on Bill 4-361, the "Victims of Violent Crime Compensation Act of 1981" (December 16, 1981), at 1.

other circuit courts had upheld the IFRP generally and against constitutional due process challenges. *Weinberger,* 268 F.3d at 360. While not addressing any specific challenges to the IFRP, the Sixth Circuit noted that it had "implicitly endorsed the program". *Id.* (*Citing United States v. Webb,* 30 F.3d 687, 690-91 (6th Cir. 1994). The Sixth Circuit has implicitly upheld the constitutionality of the IFRP in at least one other case. *See United States v. Callan,* 96 Fed. Apx. 299, 301 (6th Cir. 2004) (noting "the complete absence of any constitutional, statutory or decisional authority for the proposition that a federal district court has the subject matter jurisdiction to micro manage the IFRP for the Bureau of Prisons" and further noting that the authority that exists supports the IFRP against general, and due process, challenges)

## IV. Conclusion

Accordingly, the Court being otherwise sufficiently advised, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte,* and judgment shall be entered contemporaneously with this memorandum opinion in favor of Defendants.

This 29th day of August, 2005.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\ORDERS\ProSe\Earle 04-431-MOO dismiss DT.wpd

6